Filed 5/7/26  P. v. Hefner CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G065273 |
| v. | (Super. Ct. No. C-50770) |
| BRIAN LYLE HEFNER, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Gary S. Paer, Judge. Affirmed.

Jill Kent, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

\*       \*       \*

A jury convicted defendant Brian Lyle Hefner of one count of first degree murder (Pen. Code, § 187; count 1),[1] one count of attempted murder (§§ 664, 187; count 2), and one count of robbery (§ 211; count 3). The jury also found true the special circumstance that the murder was committed during the commission of a robbery (§ 190.2, subd. (a)(17)) and that defendant was vicariously armed in each crime (§ 12022, subd. (a)). (*People v. Hefner* et al. (Dec. 22, 2022, G060572) [nonpub. opn.] (*Hefner I*.)

The court sentenced defendant to life without possibility of parole plus 10 years in state prison as follows: (1) life without possibility of parole on count 1; (2) a consecutive term of nine years on count 2, plus one year for the arming allegation; and (3) a consecutive term of one year on count 3.[2]

In 2021, defendant filed a petition for resentencing under former section 1170.95 (now § 1172.6).[3] The trial court summarily denied the petition, and defendant appealed. Another panel of this court reversed the trial court's summary denial and directed the trial court to issue an order to show cause, conduct an evidentiary hearing on count 1, and consider whether defendant could establish a prima facie basis for relief on count 2. (*Hefner I*, *supra*, G060572.)

After an evidentiary hearing on remand, the trial court denied the petition. Defendant filed a timely notice of appeal.

---

[1] All further statutory references are to the Penal Code.

[2] A subsequent amended judgment appears to indicate the court stayed execution of the one-year sentence on count 3.

[3] Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10).

Although this is an appeal from a postconviction order, appointed counsel has filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*). Appointed counsel argues the limitations set forth in *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*) do not apply because the trial court denied the petition after issuing an order to show cause. Appointed counsel also identifies potential issues to assist in our independent review pursuant to *Anders v. California* (1967) 386 U.S. 738. Defendant was given the opportunity to file written argument on his own behalf, but he has not done so.

We need not determine whether this appeal should be determined under *Wende* or *Delgadillo*. After exercising our discretion to conduct an independent review of the record following the guidelines established in *Wende*, we find no arguable issues. We therefore affirm the court's postjudgment order denying defendant's petition.

STATEMENT OF FACTS

I.

THE UNDERLYING CRIME

In 1982, defendant was 18 years old and lived in a motel with John Visciotti. Defendant and Visciotti had a plan to steal from co-workers because they needed money. They considered "selling . . . sugar as cocaine" as well as "lots of different ideas of burning people for their money."

After defendant and Visciotti quit their jobs at Global Wholesalers, they went there to collect their last pay checks. They encountered Michael Wolbert and Timothy Dykstra, two other co-workers, in the Global Wholesalers parking lot. Defendant and Visciotti invited Wolbert and Dykstra to a party where there would be girls and cocaine. The party was "fake" and part of their plan to take money from Wolbert and Dykstra.

3

All four men then left and went to an apartment complex where defendant and Visciotti claimed to live. They dropped off defendant's car at the apartment complex, and defendant pretended to go inside for a few seconds "[t]o make it look[] like [they] actually lived there" in case Wolbert and Dykstra later came to look for them.

After defendant came back out of the apartment building, they all left together in Wolbert's car. Wolbert drove while Dykstra sat in the front passenger seat. Defendant and Visciotti were in the back seats. Wolbert followed Visciotti's directions. At some point during the drive, defendant gave his gun, which was in his waistband, to Visciotti. Defendant gave the gun to Visciotti because Visciotti "nudged [his] knee[,]" which "was [their] signal for [defendant] to hand him the gun."

They eventually ended up in the hills, and Visciotti asked Wolbert to pull over so he could go to the bathroom. Wolbert pulled over, and Visciotti, defendant, and Dykstra exited the car. Visciotti then pointed the gun at Dysktra and ordered Wolbert to exit the car. Wolbert complied and walked by defendant who said, "'He's not fuckin' around.'" After defendant demanded Wolbert's money, Wolbert told defendant where the money was in the car, and defendant retrieved it.

Visciotti then fired the gun at Dykstra. After shooting Dykstra, Visciotti fired the gun three times at Wolbert who did not lose consciousness. Wolbert heard defendant and Visciotti drive away. Dykstra ultimately died, but Wolbert survived and lost an eye because of a gunshot wound to his head.

After fleeing the scene, defendant and Visciotti "wiped all the prints and everything down on the inside of [Wolbert's] car" and dropped it off in an alley by the apartment building they had visited earlier in the night. They also retrieved defendant's car, paid for their rent, and purchased drugs.

4

Defendant wrapped his gun in a towel and put it in a compartment under a sink in their motel room.

The next day, police arrested defendant and Visciotti. During questioning, defendant initially denied any involvement in the incident. Defendant later confessed he and Visciotti lied to the victims about a party and took them to the hills. After Visciotti said he had to go to the bathroom, they pulled over, and defendant took their money. Defendant also admitted Visciotti used defendant's gun to shoot the victims. According to defendant, he was outside of the car during the shooting, but he denied telling Visciotti to shoot the victims. He admitted telling Visciotti that he hoped the victims would bleed to death so they would not get caught. Defendant further told police he took his loaded gun to use it "as a bluff," and they chose Wolbert and Dykstra as their victims because they were "unlikely to put up a decent fight." After leaving the scene, defendant wiped off their fingerprints from the car. Finally, defendant suggested he "was gonna' take the rap for [Visciotti], so he wouldn't have to go to the gas chamber."

After questioning, police took defendant and Visciotti back to the crime scene to reenact the events. The police told defendant the reenactment was for training purposes. During the reenactment, defendant said their plan was "[t]o rob them and leave them stranded and to leave them dead."

At trial, Visciotti testified defendant told him, "'Don't let them go because they'll tell.'" Defendant then kept yelling at Visciotti to shoot Dykstra and Wolbert.

## II.

### TRIAL, SENTENCING, AND PRIOR APPEALS

In 1983, a jury convicted defendant of counts 1, 2, and 3. (*Hefner I, supra*, G060572.) The jury also found true the special circumstance that the

5

murder was committed during the commission of a robbery (§ 190.2, subd. (a)(17)) and that defendant was vicariously armed in each crime (§ 12022, subd. (a)). (*Hefner I*, *supra*, G060572.)

In 1985, another panel of this court affirmed the murder and robbery convictions but reversed the special circumstance finding (murder in the commission of a robbery) and the attempted murder conviction. (*Hefner I*, *supra*, G060572.) At defendant's request, he was retried on all charges despite the binding effect of the prior first degree murder and robbery convictions. (*Ibid.*) He "specifically waived any appeal rights should the jury render a not guilty verdict on the first degree murder charge or the robbery." (*Ibid.*)

The jury again found defendant guilty of all charges and the allegations true. (*Hefner I*, *supra*, G060572.) Defendant again appealed his conviction. In 1988, another panel of this court struck the one-year term imposed for the armed allegation as to the attempted murder, stayed the one-year term for the robbery, and affirmed the judgment in all other respects. (*Ibid.*)

### III.

### DEFENDANT'S PETITION FOR RESENTENCING

In January 2021, defendant filed a petition for resentencing under section 1172.6. "In his petition for resentencing, defendant averred: '1. A complaint, information, or indictment was filed against me that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] 2a. At trial, I was convicted of 1st . . . degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine. [¶] . . . [¶] 3. I could not now be

6

convicted of 1st or 2nd degree murder because of changes made to Penal Code § § 188 and 189, effective January 1, 2019.'" (*Hefner I, supra*, G060572.)

IV.

THE TRIAL COURT'S SUMMARY DENIAL

"After a hearing where defendant was represented by counsel, the court denied the petition. The court found defendant was not eligible for resentencing 'because of the special circumstance finding . . . .' In support of its conclusion, the court issued a statement of decision and explained: 'In finding the special circumstances allegations true, the jury necessarily found that the petitioner acted with the intent to kill. Because this finding would allow Petitioner to be convicted of first or second-degree murder notwithstanding the changes to sections 188 and 189 made effective January 1, 2019, Petitioner is not eligible for relief from his murder conviction . . . .' The court further emphasized 'the only definition of malice given to the jury under the Murder definition was *express malice* only.'" (*Hefner I, supra*, G060572.) Defendant appealed.

Another panel of this court reversed the trial court's summary denial and directed the trial court to issue an order to show cause, conduct an evidentiary hearing on count 1, and consider whether defendant could establish a prima facie basis for relief on count 2. (*Hefner I, supra*, G060572.) This court explained the jury's special circumstance finding did not render defendant ineligible for relief as a matter of law. (*Ibid.*) It was possible the jury found defendant only aided and abetted the predicate felony (robbery), rather than directly aiding and abetting the murder (the actus reus). (*Ibid.*)

7

## V.

### THE EVIDENTIARY HEARING ON REMAND

On remand, the court held an evidentiary hearing. It considered, inter alia, witness testimony at the hearing, all exhibits admitted at the hearing, trial testimony from defendant's two trials, and trial testimony from Visciotti's trial.

Defendant testified as a witness at the evidentiary hearing. Among other things, he testified it was his idea to take his gun because he thought it would be helpful in their planned theft. He also knew his gun was loaded, and he and Visciotti had a "signal" to indicate when defendant would give his gun to Visciotti. But he claimed "[t]here was never supposed to be any violence[,]" and he did not tell Visciotti to shoot Wolbert or Dykstra.

Defendant further testified he knew Visciotti intended to have Wolbert pull over by pretending he needed to urinate. Defendant claimed to have been outside of the car when the shooting occurred. He indicated his prior trial testimony that he was inside the car was false. He lied at trial because he thought "it would be in [his] best interest if [he] was in the car." Finally, defendant testified Dykstra was alive after the shooting, but defendant did not tell Visciotti as they drove away.

## VI.

### THE COURT'S ORDER DENYING DEFENDANT'S PETITION

After further briefing from the parties, the court denied defendant's petition for resentencing. The court found the prosecution proved beyond a reasonable doubt that defendant was guilty of the murder of Dykstra under several theories: (1) felony murder under current law because defendant was a major participant in the robbery who acted with reckless

8

indifference to human life; (2) direct aiding and abetting with express malice; and (3) direct aiding and abetting with implied malice.

As to attempted murder, the court held the prosecution proved beyond a reasonable doubt that defendant could be convicted of the attempted murder of Wolbert under current law. The court incorporated by reference its analysis regarding defendant's role as a major participant who acted with reckless indifference to human life. It added: "[D]efendant's statements to law enforcement after his arrest [also] support this finding."

Finally, the court generally found defendant's testimony at the evidentiary hearing was not credible. And the court noted it considered testimony regarding adolescence and neuroscience. Although defendant was 18 years old at the time of the crime, the court held his behavior was not motivated by immaturity or any issues regarding impulse control, risk taking, and vulnerability to peer pressure. The court emphasized defendant was aware a robbery would take place, purposely retrieved a loaded gun, and hid the gun from the victims' view. There also was no evidence defendant had a traumatic upbringing or experienced any peer pressure.

Defendant filed a timely notice of appeal.

DISCUSSION

Defendant's counsel suggests we consider the following issues: (1) whether the prosecution presented insufficient evidence defendant was guilty as a major participant who acted with reckless indifference, as a direct aider and abettor, or because he harbored an intent to kill; (2) whether the trial court erred by denying the petition "on the ground that the actus reus of first degree felony murder requires that a defendant who is not the actual killer need only aid in the underlying felony and not in the killing itself"; and (3) whether the police's characterization of "the visit to the crime scene with

9

[defendant] as a training exercise affect[ed] the admissibility of [defendant's] statements made during the exercise." As discussed *post*, the record discloses no arguable error.[4]

I.

APPLICABLE LAW AND STANDARD OF REVIEW

"Effective January 1, 2019, the Legislature passed Senate Bill 1437 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.'" (*People v. Lewis* (2021) 11 Cal.5th 952, 959.) "A felony-murder conviction may no longer rest on the mere commission of and intent to commit an underlying felony. If a defendant was not the actual killer or an aider and abettor acting with intent to kill, the statute now requires that the defendant be a major participant in the felony who acted with reckless indifference to human life." (*People v. Emanuel* (2025) 17 Cal.5th 867, 875.) Effective January 1, 2022, Senate Bill No. 775 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 551, § 2) amended section 1172.6 to expand resentencing eligibility to persons convicted of attempted murder.

The burden of proof is on the prosecution to prove beyond a reasonable doubt the defendant is ineligible for resentencing. (§ 1172.6, subd. (d)(3).) To determine if a trial court properly denied a section 1172.6 petition

---

[4] Defendant has filed a request for judicial notice asking that we take judicial notice of the appellate record in *People v. Hefner* et al. (May 12, 1988, G004568) [nonpub. opn.]. We deny defendant's request because the documents are unnecessary to the resolution of this appeal.

after an evidentiary hearing, we review the factual findings for substantial evidence. (*People v. Arnold* (2023) 93 Cal.App.5th 376, 383.) "We view the facts in the light most favorable to the People. In this process, we presume in support of the judgment the existence of every fact that can be reasonably deduced from the evidence, whether direct or circumstantial. [Citations.] We must accept factual inferences in favor of the trial court's ruling." (*People v. Mitchell* (2022) 81 Cal.App.5th 575, 591.)

## II.

### SUFFICIENCY OF THE EVIDENCE

A major participant in a robbery is someone whose "personal involvement [is] substantial, greater than the actions of an ordinary aider and abettor." (*People v. Banks* (2015) 61 Cal.4th 788, 802.) Factors bearing on the major participation requirement include the defendant's (1) role in planning the crime that led to one or more deaths; (2) role in supplying or using lethal weapons; (3) awareness of the particular dangers created by the nature of the crime, the weapons used, or the other participants; (4) presence at the scene, including whether he could have facilitated or prevented the murder, and whether his actions played a role in the murder; and (5) actions after lethal force was used. (*Id.* at p. 803.) "No one of these considerations is necessary, nor is any of them necessarily sufficient. All may be weighed in determining . . . whether the defendant's participation . . . was sufficiently significant to be considered 'major.'" (*Ibid.*)

Whether a defendant acted with reckless indifference to human life depends on whether the defendant was "'aware of and willingly involved in the violent manner in which the particular offense is committed,' and . . . consciously disregard[ed] 'the significant risk of death'" created by his actions. (*In re Scoggins* (2020) 9 Cal.5th 667, 677.) "'"[T]he risk [of death]

11

must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him [or her], its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation."'" (*Ibid.*) The factors for determining whether a defendant acted with reckless indifference to human life overlap with the major participant factors and include: (1) defendant's knowledge that weapons would be used; (2) how the weapons were used and the number of weapons; (3) defendant's proximity to the crime; (4) defendant's opportunity to stop the killing or aid the victim; (5) duration of the crime; (6) defendant's knowledge of the killer's propensity to kill; and (7) defendant's efforts to minimize the possibility of violence during the crime. (*People v. Owens* (2022) 78 Cal.App.5th 1015, 1023–1024.)

Here, substantial evidence and the totality of the circumstances supported the court's findings that defendant was a major participant in the robbery and acted with reckless indifference to human life. Defendant planned a ruse with Visciotti to lure two victims to a non-existent party so they could steal their money. He took a loaded gun with him, believed it would be "helpful" in their plan, and had a signal planned for when he would give the gun to Visciotti. Once the victims were outside of the car, defendant demanded Wolbert's money and searched the car for it. Defendant admitted he was outside of the car during the shooting, and he made no effort to intervene. There also was evidence that defendant told Visciotti to shoot the victims. After the shooting, defendant left the scene with Visciotti, wiped down Wolbert's car to conceal any fingerprints, abandoned the car in an alley, and hid the gun under a sink in his hotel room. He also used the stolen money to pay rent at the hotel and buy drugs on the same night of the shooting. He later told police he hoped the victims would bleed to death.

Finally, defendant was aware of Visciotti's prison history. On this record, substantial evidence supports the court's finding that defendant was a major participant who acted with reckless indifference to human life. He is therefore ineligible for relief under section 1172.6.

As noted *ante*, defendant's counsel asks us to consider whether the police's characterization of the reenactment as a "training exercise" affects the admissibility of defendant's statements made during the reenactment. This contention does not present an arguable issue. The record does not support a claim that the statements were obtained in violation of *Miranda v. Arizona* (1966) 384 U.S. 436 or were otherwise involuntary. Regardless, the trial court found defendant was guilty of murder and attempted murder under a valid felony murder theory based on substantial evidence independent of defendant's statements made during the reenactment. It is not reasonably probable the trial court would have reached a different result if the statements had been excluded.

We have further reviewed the record in accordance with our obligations under *Wende* and find no other arguable issues on appeal.

DISPOSITION

The postjudgment order is affirmed.


SANCHEZ, ACTING P. J.

WE CONCUR:


GOODING, J.


BANCROFT, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.